The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zienoff presiding. Good morning, counsel. This is case number 4-220947, People of the State of Illinois v. Robert Breshears Jr. Would counsel for the appellant please state your name for the record. Good morning, John Hanlon on behalf of Robert Breshears, H-A-N-L-O-N. Thank you. Would counsel for the appellate please state your name for the record. Kim Lodrigan, Office of the Appellate Prosecutor for the State. Thank you. Are counsel ready to proceed? Yes, Your Honor. All right, you may proceed, Mr. Hanlon. Thank you, Your Honor. In just 15 seconds of personal indulgence, I began my career literally 40 years ago in this court. And it's a pleasure to be returning this many years later to the same court, although in a different method. I walked in the door then, but it's a pleasure to be in the 4th District again. Thank you for this opportunity to address the court. Welcome. Thank you. May it please the court and good morning, counsel. My client, Robert Breshears, was convicted in Mercer County of two incidents of criminal sexual assault based on his relationship with a young woman who would not turn 18 for three months after that relationship began. He was convicted of criminal sexual assault for having been in a position of authority and supervision relative to E.K., who is the young woman in question. The element of the statute of trust is not a part of this case that was not alleged by the prosecution below. So we're dealing with supervision and authority as the elements of the statute that were alleged and apparently found by this jury. Mr. Hanlon? Yes, Your Honor. With respect to the issue of authority, you argue at page 16 of your brief that E.K. was anything but amenable to the authority or supervision of Mr. Breshears or anyone else. Now, the appellee here cites a case, People v. Grocessly, if I'm pronouncing it correctly, where the court said that criminal sexual assault statute does not require that the victim possess knowledge of the perpetrator's position of authority, supervision, or trust in relation to her. So if E.K. didn't even have to know that defendant was in a position of authority in relation to her, why does it matter whether she was amenable to that authority? Thank you, Your Honor. I understand the question. Your Honor, I've cited two different cases in my brief, which I believe is the Reynolds case in particular. Reynolds was a former U.S. congressman who was convicted of this offense pertaining to a teenager who worked for him. And what the court said in that case, Your Honor, and I'm looking for the specific site, is that, yes, in the Reynolds case, that the position of authority or supervision must result from the status of the offender alone, but it must exist in relation to the victim. The cases go on to look at how, for example, in the Secor case, a child staying over, a 14-year-old child, much younger than this child, a 14-year-old child staying in the home of a friend whose parent became the defendant, how that child would be amenable, that's my word, to the supervision. However, Your Honor, I think what the cases are fairly saying is that we have to look at the actual facts of how the individual in question, the complainant, interacted with the defendant. And here, as I laid out, this young woman was anything but respectful, and I'm not saying she should have had to have had respect, but was not, you know, was not respectful, I will say respectful, was not respectful in these classes that she took. Are you saying, counsel, excuse me, that the state has to prove that the victim was amenable to authority to sustain the conviction under this statute? Well, that language is not in the statute, of course. However, I do think that based on the cases, we do have to see was the, how did the victim behave in terms of, was it apparent to her that there was a position of authority? Let me just ask this then as a follow-up. So if, for example, a high school teacher had a sexual relationship with a 17-year-old student, would it be a valid defense to the criminal charges under this authority provision that the student was unruly and controllable in class? Is this what the legislature intended? Well, Your Honor, I think that that would be for a jury to decide. If the student never showed up to class, but there was some relationship carrying on otherwise, if the student never showed up to class and was disobedient and unruly, I do think that those are factors that a jury could say, you know, this person was not, as a matter of fact, under the supervision. She was unsupervisable. This person was not under the authority, other than very technically, of that teacher or similar in this case, because she behaved in a manner that rejected authority. She did what she wanted to do. Counsel, that is an interesting argument, an interesting slant on this, but I think the follow-up to Justice Zinoff's question is, you would be talking about a factual determination by a jury in every scoutmaster, basketball coach, minister, priest. Many times, the behavior of the youngster is because they think or know they can get away with it, because they do have a special relationship outside the basketball court or outside the scoutmaster position or outside scouting activities, because they're carrying on or having been imposed upon them this sexual relationship. I don't think the legislature had any idea that that would be a factual matter for the jury. I think that's why we've established this position of authority, not we, why the legislature has established that. So, I understand your argument, but I can tell you right now that I'm rolling my eyes already. I understand that. Appreciate your position, Your Honor. However, I would say in the cases that you cited, again, this is something for the jury to consider. That's all I'm saying, that this is something for the jury to consider. And in this case, the evidence was such that this woman was totally disregarding of authority, totally unsupervisable. That in this particular case, unlike, for example, the child in one of the cases who was a blind child who was trying to go for a swim, and a guy, some guy who became the defendant, sexually assaulted this young blind child. Obviously, that child was in need of supervision. Or the 14-year-old child in the C-Corps case. That is a far cry from a 17-year-old, within three months of being 18, who behaves in this manner. This man refers to him by his first name, Bob, who shows up whenever she wants to show up, who's unruly when the class is going on, to the extent that he has to bring in another teacher to work with her. Excuse me, counsel. Go ahead. To that extent, he still indicated in the trial transcripts that he was, he said he felt uncomfortable teaching her, but he was still teaching her. He was still attempting to exert authority over her. He didn't want her to be disruptive during class. He wanted her to pay attention and, as you noted, then brought someone in to help him instruct her. And so if we're discussing authority and you're discussing that as a matter of a jury, other than the common definition, since Section 11 does not define authority, I mean, how would you define authority other than that common dictionary meaning? And isn't he showing or stating specifically that he was trying to exercise authority over her? I'm trying, but extremely unsuccessfully. I think that's the whole point, Your Honor, is that this woman, young woman, rejected authority, did not see him at all in that light. And I would note that, and you asked, I think, a very good question, what is the definition of these terms? And, again, that's up to the jury, apparently. There was a very brief jury instruction given as to the word authority. I mean, clearly the jury struggled with this because they sent out a note asking what this means. And so the judge sent back a short, rather than the requested longer, jury instruction, and that was as to the term supervision, actually. The court here just told the jury that supervision was merely the act of supervising someone or something, the act of overseeing, as opposed to a longer definition, which could but was not given. So the jury was struggling with this. And what I'm saying, Your Honor, is this is a jury question. And the case of a scoutmaster with a young child is just grossly different than this situation where this young woman was, again, this is in the record, was drinking, was left a particular gathering, came back with another young man with alcohol. Well, counsel, if I can interrupt in focusing on the behavior that you're just talking about. I mean, the defendant recognized, let's call it E.K.'s immaturity, the fact that she was unruly, yet he granted her unrestricted access to his business property and had a sexual relationship with her. So couldn't a reasonable jury conclude that the defendant used his position as E.K.'s martial arts instructor to take advantage of her? I appreciate that question. But that, again, is my argument that when we look at the specific conduct that this young person was engaging in, that it simply fails the authority or supervision standard. She was running on her own. And, you know, I understand the question. I understand the purpose of the statute. It is to protect vulnerable young people. There is maybe one angle to argue that she started to venture into the category of vulnerable. But as I said, reading this record, she was, for lack of a better term, a wild young child doing whatever she wanted. And again, with this business, again, this is not a school where someone is required to show up. She was able to show up whenever she wanted. She was able to take the instruction as seriously or not as seriously as she wanted. She apparently didn't because he had to call in someone else to kind of get a handle on it. So I appreciate your question. Excuse me. You mentioned this was a private business. There is a case, the second district case authored by retired Justice Bob Thomas, People vs. Grano, where the state prosecuted a karate school instructor under the supervision aspect of the statute where he had a sexual relationship with a girl who took classes at the school and eventually became an instructor there. Now, there the appellate court reversed and remanded based on a different evidentiary issue. But the court determined that the evidence was sufficient to sustain the defendant's conviction. So doesn't that suggest that the owner of a private martial arts school may come within the scope of this statute, notwithstanding your argument that this was a private business? Your Honor, I appreciate your citation of that case. I'm familiar with that case, although I don't recall the age of that person. And I think I just don't think we can say that someone who, I mean, this young person was almost 18. And I just think that that is factually and as a qualitative matter just different than a younger person, a 13, 14, 15-year-old person who clearly is going to be more subject to the authority of an adult. And I think the point of this argument is that this young woman was not subject to anyone's authority. It's a sad situation, frankly, but she was not subject to anyone's authority. That's the clear derivation from the record, as I see it, Your Honors. If I may, I'm not sure how much time I have left, but I'd like to move on to the second argument, if Your Honors would indulge me in that at this point. Thank you. Your Honors, this is, of course, relevant to the comments of the judge made at the sentencing hearing. In some ways, I raise this reluctantly because, again, after being a lawyer for almost 40 years now, I have the utmost respect for those of you on the bench in the circuit court, the Supreme Court, and the appellate court, all of you. And so that's how we're trained and that's how it should be. But I think that's part of the point, is that we grant, you know, I grant that respect and hopefully all lawyers grant that respect and that deference to judges because of the immense authority and importance of your position and the tremendously difficult, important for our citizens, matters that you rule on. And so I say, you know, on the one hand, I hesitate to raise this, but on the other hand, as I think about this, I shouldn't hesitate to raise this because the whole point is that these remarks were just out of balance, in my estimation, a lot, way out of balance. Well, counsel, you talk at page two of your reply brief, a trial court disclosing, quote, biases to the parties earlier so that they could have moved for substitution of judge. And I guess I'm not sure exactly what you're suggesting the court should have told the parties. Are you suggesting that the judge was required to tell the parties before the trial that she grew up in a house with domestic violence? Your Honor, if it was important enough to say at the sentencing hearing, I don't know why it wouldn't be important enough to reveal prior to a trial. Yes, I think that there could have been some disclosure that, I mean, she found this important enough to say this in a felony prosecution where a man went to prison. She thought that that was important enough for her to put on the record, along with her attitude about men and about criminal defendants. She was calling upon her personal experience. I mean, she could have... Where she spoke to the victim at the sentencing hearing. Isn't that the context in which we are looking at these comments, counsel? Yes, Your Honor. These remarks were made after the victim had rendered her rather lengthy and frankly emotional victim impact statement. Yes, that's correct. Right. And couldn't these comments be understood as comments that were designed to support the victim, given the position the victim was in? I think that that is one reading of it, but the judge's job, quite frankly, at that point, is not... I mean, the state's attorney's offices have victim support services. That's their job. The judge's job at this point was to make a fair ruling on the post-trial motion and then render a fair sentence for this man. And I understand where some comments may have been appropriate. But to go to the extent of interjecting her personal experiences of 18 years of domestic violence, which concludes then in saying a comment about what every man wants, that women are asked to render what every man wants. I think that this just starts at the appearance of impropriety. Frankly, I can't imagine if this had been a male judge and had said what every woman wants. That would be grossly out of bounds. And this is no different, quite frankly. Are you suggesting that this judge should have recused itself in any case involving a male defendant or litigant? No, Your Honor. We asked... And were there any rulings, counsel? Well, first of all, the court imposed the agreed-upon sentence here. Isn't that correct? Yes, Your Honor. That's correct. And were there any rulings that defendant objected to during the trial that this defendant... I'm sorry, that the court made? Your Honor, I appreciate that question. There were a number of critical rulings that this judge made. And at the time they were made, we didn't, the counsel below, did not have the benefit of this knowledge that this judge had attitude toward males and toward criminal defendants. She ruled on the post-trial motion. She ruled on a motion for directed verdict. She ruled on a pretrial motion to dismiss. She ruled on a state's pretrial motion to exclude witnesses and then excluded several of the defendant's witnesses. So these are all absolutely crucial motions and rulings that this judge made. Can you articulate, counsel, the prejudice that the defendant suffered from the court's rulings or remarks as a result of the remarks made during the sentencing hearing? Well, Your Honor, first of all, the rulings that I just mentioned, again, we don't know because this had not been fleshed out. She had not disclosed any of these attitudes. We asked jurors, can you put aside your personal beliefs? But then here we have a judge and the case law is pretty good on this. So the case law says your personal beliefs don't belong in the record. In these cases where the judge evaluated, for example, the Kennedy case where a judge made negative comments about the defendant's witnesses and prejudged their testimony and just kind of ripped them up one side and down the other, called them drug addicts and fornicators and all other kinds of things. And the appellate court said this is just not appropriate. Counsel, I'm sorry, your time is up. You certainly have time on rebuttal, but Justice Connick, do you have any further questions at this time? I have a comment, Mr. Hanlon. There's a certain degree of irony in the fact that you're making these arguments and that I overreacted to your argument and said I was almost ready to roll my eyes. That was inappropriate of me. I just had never heard this argument before, and I guess I'm thinking of the status of the defendant relating to the status of the minor. So I will give your arguments the deference they deserve, and I apologize for the inappropriate reference of rolling my eyes. Thank you for talking. Thank you, Your Honor. Justice Lanard, do you have any questions at this time? Not at this time. Thank you. Mr. Lonergan, you may begin your argument. Thank you, Your Honors. Good morning, Counsel. I really don't have a great deal to add to my written brief from the questions posed by the bench. It's pretty clear that the bench understands what the issues are, and there's not a great deal more I can add to it. But listening to Counsel's argument, and I respect that Counsel stuck with the facts before him and the law as it exists. In fact, there's very little argument as to what the facts are in this case. The defendant pretty much admitted to the majority of his conduct. And I couldn't help but notice that Counsel repeatedly suggested that it was an issue for the jury, which is exactly the point. He's challenging the sufficiency of the evidence. But the jury heard all the evidence, and they properly determined that the evidence was sufficient to convict this gentleman of having some type of supervisory or authority over this particular victim. And it's pretty much a classic case. Counsel, excuse me. On that point that you're just making, we know that case law defines authority as the power to command and enforce laws, exact obedience, determine, or judge. That's from People v. Secor, which opposing counsel mentioned during his argument. Can you tell us what evidence in this case here met that standard? Yes. You know, pretty clearly, first of all, this gentleman's 50 years old, his victim is 17. He owns and operates a self-defense gym, which, you know, if you're familiar with self-defense, it's a disciplined and authority type of, well, when one instructs in self-defense, the authority of the person of the dojo, if you will, is paramount and an important aspect. You're supposed to have self-discipline, you're supposed to be able to follow instructions and control yourself and abide by the authority of the teacher or the instructor. That's part of the actual learning of the self-defense discipline. I'm not sure which, you know, discipline he was teaching. You know, there's several, usually Asian in origin. But, you know, as I was suggesting, the classic definition of one who holds a position of authority or trust is a teacher or a coach. That's what the case law is pretty much replete with. And you don't have to, the victim doesn't have to know of your position because the position allows that person access to the victim. So it's not simply that you're actually exerting the authority. It's the fact that you hold this position. It gives you the opportunity to take advantage of the victim. So that's why knowledge by the victim is not an element of the offense. It's not something to consider. And I would argue neither is the conduct of the victim, whether the victim was unruly or obnoxious or whatever you want to try to portray her as. Well, that's what I was going to ask you about, how you would respond to opposing counsel's argument that we have to look at whether or not the victim was amenable to the supervision or the authority. And we have to take a, we have to focus on that. Why is that not important? Because it's not an element of the offense, Your Honor. It has nothing to do with the charges being made. The offense does not, or the actual charge being made does not suggest that the authority has to be exerted and that the victim has to succumb to that authority. Those are not issues at all. The victim here is not on trial. The concentration is on the actions of the defendant and the position that he holds. And the fact that this position not only makes it easier for him to take advantage of the victim, but puts, it gives him that opportunity, places him in a position where other adults would otherwise, you know, be more relaxed and allowing the defendant to have access over a minor. As that, and I guess what I'll say addressing that particular issue then, during the time that the gym was closed for COVID, he's not teaching formalized classes at that point. How, how do you address that particular issue when he's not actually instructing her, she apparently just has access to the facility. Well, Your Honor, I would argue that the established relationship of the parties as teacher and student has long since been established and continues there on. I mean, if you're going to take that argument and run it out to its natural logical conclusion, are we going to argue that priests don't have a position of authority when they're not saying mass, that a teacher doesn't have position of authority when you're on spring break or during summer break? Or a coach. I mean, there's authority that says the victim doesn't even have to know that the defendant was a coach. It's the fact that the defendant was a coach that gave him access to that particular victim. So, these momentary breaks, you know, have nothing to do with it. Once the position allows the defendant access to the victim, the concerns of the statute have been met and temporary breaks in things like whether or not you're actually teaching or coaching at that particular time simply aren't relevant. How do you respond to counsel's argument that the court's remarks, in essence, were inappropriate? Well, and biases or views with regard to men and domestic violence should have been disclosed up front. Well, I think as mentioned by yourself, Justice, I mean, the comments made were pretty vague. They were not specific to this defendant. And I think the law suggests that there has to be personal prejudice or bias. So, it has to be some kind of bias that's directed at this particular defendant, not men in general, criminals in general. I mean, as you suggested, if we're going to indicate that comments of this nature require this judge to recuse herself, she might as well step down from the bench if she can't handle any cases that involve men or any cases that involve criminal activity of a sexual nature. I mean, these are vague terms not meant to be directed at this defendant. And quite clearly, we're aimed at the victim. The victim, as admitted by counsel, quite appropriately, you know, she gave a long and impassioned emotional comment, victim impact statement to the bench. And I think that the court was properly moved by that statement and felt compelled to address some of the victim's concerns. You know, whether or not me or you or any other judge might have chosen our words differently, I don't think is important. I don't think that these comments by the court indicated a personal bias toward this defendant. And the defendant can't point to a single instance of actual concern over a ruling of the court and admits that the sentence itself was appropriate. It was agreed to. So where's the prejudice? I don't understand what's being objected to by the defendant, other than the general comments themselves. If they don't show an actual prejudice, what are we talking about? So, you know, I understand counsel's face with, you know, the facts that he has and has to argue zealously on behalf of his client. I respect the arguments being made. But clearly, the evidence was overwhelming that this gentleman was guilty of these offenses. The agreed to sentence was 20 years and he got it. Well, you know, so for those reasons, I can't see the existence of any error in this record. There's no further questions from the bench. Justice Connacht, do you have any further questions? No, thank you. Justice Leonard? No, thank you. All right. Thank you very much, counsel. Mr. Hanlon, now you may have time for rebuttal. Thank you, Your Honors. If I may begin with the latter issue first. The issue regarding the comments of the judge. You know, our discussion so far has been on somewhat of a broad basis about, will this judge therefore have to recuse herself from every case involving a man? And counsel says, well, she might as well not be a judge. That's not the issue in this case. The issue in this case for this court to decide respectfully, it pertains to this judgment. This judge's comments on this record in this particular case. That's all we're asking. We look at the cases that I've cited and the courts have determined in those cases to reverse the conviction because the judge indicated attitudes that were just inappropriate. And that's all I'm saying here. And I mentioned earlier, judges ask jurors to set aside or ask them, can you set aside personal beliefs, personal biases? That happens all the time. And if this judge is to continue being a judge, which I assume and hope that she is, then she's going to have to do that, too. She's going to have to set aside these kinds of biases. If I was litigating in front of this judge, I would feel duty bound to tell my client, you know, she said something about men in another case. I'm concerned to my male client. I'm concerned what we should do. Should we seek an SOJ here? Because if you get convicted, you might get hammered at sentencing or on rulings as we go through. I would be legitimately concerned by this comment about men and about criminal defendants. Her job as the judge was to enforce the rights of everyone, including the defendant. And so for her to come out at the beginning of this quoted statement and say that the defendants have all the rights, I just think that that's inappropriate on this record. I understand trying to assuage this young woman. I get that. The judge has a heart and was trying to convey that. But indicating that defendants have all the rights, that's her job is to enforce those rights. All of them. Yes. Do you, are you willing to concede that it does make a difference that these comments were directed toward a victim? You've mentioned that perhaps she was trying to assuage attitudes of the victim. Does it make a difference that she was saying this to the victim as opposed to looking at the defendant, you know, wagging the finger and talking about these attitudes that you suggest that she may have had? I appreciate the heart and the intent of what your honor has just stated and that the judge below, you know, clearly, you know, had the victim in mind. I mean, gosh, if nothing else, in terms of the contemporaneous nature of the victim impact, it had to be an overwhelming emotional statement. But look what happened. That emotionality brought out this emotionality. And that's not what judges are supposed to do. Judges are supposed to be able to separate themselves from the emotionality of a situation and make appropriate rulings and determinations. I don't know that you can draw a bright line down the middle and say, well, these comments were just directed to the victim. They had nothing to do with the person who was in front of her to be sentenced. Of course they did. So, frankly, I appreciate the heart and the intent that as to that part of it. But I don't think that we can, this is all enmeshed. This is a man on trial who's now sitting in prison. I just don't know that we can separate those. So, and counsel asked, what's the prejudice? And, again, had the judge disclosed any of this prior or had the judge never gone on to say any of this, it would be a different situation. But because these disclosures came at the very, very last moment of this trial, you know, we can only look back and say, oh, you know, okay, this judge sat on this case and heard all these different motions. This judge excluded four witnesses from this trial. This judge declined the reasonable doubt argument that I'm making now, declined that in the post-trial motion situation. There was a lot of, there were a lot of important issues in front of her. And I see that my time is up. I appreciate the court's questions and listening to the arguments that we've made. Thank you, Your Honors. Thank you. Justice Connacht, do you have any further questions? I do not, thank you. Justice Lannert? I do not, thank you. Thank you. Thank you very much, counsel, for your arguments this morning. The court will take matter under advisement and render a decision in due course.